IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ALAN W. KINGSLEY,

      **Plaintiff,**

v.                                                      CASE NO. 23-3207-JWL

STEVEN A. GROENE, M.D.,
et al.,

      **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Alan W. Kingsley is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

## I. Nature of the Matter before the Court

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF").

Plaintiff alleges that he is suffering from "botched up hernia operation(s)." (Doc. 1, at 2.) Plaintiff alleges that he received two surgeries, one on February 14, 2013, and one on March 22, 2019. (Doc. 1–1, at 2.) Plaintiff claims that a mesh implant was performed in his first surgery in 2013. *Id*. Plaintiff alleges that he continued to suffer from pain after the first surgery, and he was placed "on chronic care for the pain, and prescribed 500 mg x 2 daily naproxen." *Id*.

Plaintiff alleges that after he was transferred to the Ellsworth Correctional Facility in 2018, he received a cat scan and the results were read to Plaintiff on August 3, 2018. *Id*. at 3. On September 4, 2018, Dr. Kepka asked Plaintiff if a mesh implant had been inserted during his 2013 hernia surgery, and Plaintiff confirmed that it had. *Id*. Dr. Kepka told Plaintiff that the

mesh was bad and had to come out, and scheduled an outside surgery for Plaintiff. Corizon would not approve the surgery without a second opinion, which was done and resulted in the same recommendation. *Id*.

Plaintiff's second surgery was performed on March 22, 2019, by Dr. Groene. *Id*. Plaintiff alleges that there were complications during the surgery and "Dr. Groene had to cut out and completely remove 2 nerves, as well as perform a partial vasectomy on the Plaintiff's right groin." *Id*. Plaintiff claims that he has continuing pain in his pubic area, right leg and abdominal area, he cannot stand for long periods of time, and he cannot lift more than 15 pounds without experiencing sharp pains in his groin area. *Id*. Plaintiff alleges that Dr. Groene failed to review the previous operative report from Plaintiff's first surgery and "dissected his cuts right into the old surgical scars." *Id*. at 4. Plaintiff alleges that when complications occurred, Dr. Groene should have stopped the surgery and either reassessed the surgery or dissected a new cut "so that he could see what he was doing." *Id*. Plaintiff claims Dr. Groene then could have clamped off the nerves and vessels to save them, instead of cutting them out. *Id*. Plaintiff alleges that Dr. Groene committed further "surgical blunders." *Id*.

Plaintiff alleges that he suffers a continuing injury, and still suffers from severe pain in his pubic area, right leg and abdominal area, cannot stand for very long, and cannot lift anything over 15 pounds without experiencing sharp pain in his groin area. *Id*. at 5.

Plaintiff alleges that the Defendants were negligent in failing "to exercise the standards of care that a reasonably prudent person would have exercised in a similar situation; any conduct that falls below th[e] legal standard of care that a reasonably prudent person would have exercised in a similar situation; any conduct that falls below the legal standard established to protect others against unreasonable risk of harm, except for the defendants conduct[] that is

intentionally, wanton, and willfully, disregardful of the Plaintiff's rights . . . [w]hich is exactly what happened in this case." *Id*. at 6. Plaintiff alleges that "Defendants" knew the mesh implant product was defective, but they implanted it in Plaintiff's body anyway. *Id*. at 6–7. Plaintiff also alleges violations of his Fifth, Eighth and Fourteenth Amendment rights. *Id*. at 8.

Plaintiff names various medical doctors, hospitals, and healthcare providers as defendants, and seeks $100,000 in compensatory damages and "a new surgery to repair the botched up surgery that previous defendants inflicted on plaintiff, by a new/different doctor." (Doc. 1, at 5.) Plaintiff also seeks actual damages, continuing damages, future damages, and punitive damages. (Doc. 1–1, at 6.)

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th

Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the

4

line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Statute of Limitations

"It is well-settled . . . that 'state law determines the appropriate statute of limitations and accompanying tolling provisions' for § 1983 and *Bivens* claims." *Herrera-Zamora v. Crosby*, 769 F. App'x 670, 671 (10th Cir. 2019) (unpublished) (citing *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (§ 1983); *Indus. Constr. Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994) (*Bivens*)). "Federal law only controls the issue of when the federal cause of action accrued." *Id*. (citing *Fratus*, 49 F.3d at 675).

"The forum state's statute of limitations for personal injury actions governs civil rights claims under both 42 U.S.C. § 1981 and § 1983. . . . In Kansas, that is the two-year statute of limitations in Kan. Stat. Ann. § 60–513(a)." *Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184, 1188 (10th Cir. 2006) (citations omitted).

While state law governs the length of the limitations period and tolling issues, "the accrual date of a § 1983 cause of action is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, the claim accrues "when the plaintiff has a complete and present cause of action." *Id.* (internal quotation marks and citation omitted). In other words, "[a] § 1983 action accrues when facts that would support a cause of action are or should be apparent."

5

*Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (internal quotation marks and citation omitted), *cert. denied* 549 U.S. 1059 (2006).  A district court may dismiss a complaint filed by an indigent plaintiff if it is patently clear from the allegations as tendered that the action is barred by the statute of limitations.  *Id*. at 1258–59; *see also Jones v. Bock*, 549 U.S. 199, 214 (2007); *Hawkins v. Lemons*, No. 09-3116-SAC, 2009 WL 2475130, at *2 (D. Kan. Aug. 12, 2009).

The Kansas Supreme Court tolled the state statutes of limitations in response to the COVID-19 pandemic.  *See Korgan v. Estate of Hansen by and through Cramer*, 2022 WL 4465074, at *2–4 (D. Kan. Sept. 26, 2022) (finding that the statute of limitations was tolled from March 19, 2020 through April 14, 2021).  The tolling or suspension is set forth in Kansas Supreme Court ("KSC") Administrative Order 2020-PR-016, as amended by KSC Administrative Order 2020-PR-32.

All of Plaintiff's claims relate to the surgeries he received in 2013 and 2019.[1]  Plaintiff filed his Complaint on September 7, 2023.  Even considering the KSC's suspension or tolling, Plaintiff's claims are still untimely.  Even disregarding the time that ran prior to the March 19, 2020 suspension, Plaintiff did not file his Complaint until more than two years passed since the reinstatement on April 15, 2021.  It thus appears that any events or acts of Defendants took place more than two years prior to the filing of Plaintiff's Complaint and are time-barred.  *See Fratus v. Deland*, 49 F.3d 673, 674-75 (10th Cir. 1995) (district court may consider affirmative defenses *sua sponte* when the defense is obvious from the face of the complaint and no further factual record is required to be developed).  Plaintiff has not alleged facts suggesting that he would be entitled to additional statutory or equitable tolling.  Plaintiff should show good cause why his claims should not be barred by the applicable statute of limitations.

---

[1]  Plaintiff has not alleged that he is currently being denied proper medical care, including pain medication, at HCF. He has not named HCF staff as defendants.

**2. Medical Care**

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishments.  The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Boyett v. County of Washington*, 282 F. App'x 667, 672 (10th Cir. 2008) (citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)).  The "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind."  *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety."  *Martinez*, 430 F.3d at 1304 (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotation omitted)).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 1305 (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (quotation omitted)).

An inadvertent failure to provide adequate medical care or a negligent diagnosis "fail[s] to establish the requisite culpable state of mind."  *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  Likewise, a mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual

punishment. *See Estelle*, 429 U.S. at 106–07.

Even if Plaintiff's claims are not barred by the statute of limitations, they suggest, at most, negligence. The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). Any medical malpractice claims must be brought in state court.

In fact, Plaintiff has raised these claims in a medical malpractice case in state court. *See Kingsley v. Groene*, Case No. 2021-cv-000107 (Reno County District Court). Plaintiff previously attempted to remove the Reno County case to this Court. *See Kingsley v. Groene*, Case No. 23-3094-JWL. This Court dismissed that case, finding that the state case was closed and "Plaintiff has not shown that he can properly remove a closed case that he initiated in state court." *Id*. at Doc. 2 (D. Kan. April 5, 2023). This Court found that "[o]n March 13, 2023, the district court judge entered an Order of Dismissal, dismissed the matter without prejudice for failure to prosecute, and closed the case . . . [i]n fact, Plaintiff has included the dismissal order with his pleading in this case." *Id*. at 1 (citing Doc. 1, at 4).

Plaintiff must show good cause why his claims are not barred by the statute of limitations and why his claims should not be dismissed for failure to state a constitutional violation.

**IV. Motion for Leave to Proceed In Forma Pauperis**

Plaintiff has filed a motion for leave to proceed in forma pauperis (Doc. 2). The financial information submitted with his motion shows that he is not indigent and that he has sufficient funds to pay the filing fee. *See* Doc. 2–1. Therefore, the Court denies the motion and orders Plaintiff to pay the full $402.00 district court filing fee[2] to the Court by September 29, 2023. If

---

[2] If a person is not granted in forma pauperis status under § 1915, the fee to file a non-habeas civil action includes the $350.00 fee required by 28 U.S.C. § 1914(a) and a $52.00 general administrative fee pursuant to § 1914(b) and

he fails to pay the full fee within the prescribed time, the Complaint will be dismissed based upon Plaintiff's failure to satisfy the statutory district court filing fee required by 28 U.S.C. § 1914.

## V. Response Required

Plaintiff is required to show good cause why Plaintiff's Complaint should not be dismissed for the reasons stated herein. Failure to respond by the Court's deadline may result in dismissal of this action without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Leave to Proceed In Forma Pauperis (Doc. 2) is **denied.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **September 29, 2023,** to submit the $402.00 filing fee. The failure to submit the fee by that date will result in the dismissal of this matter without prejudice and without additional prior notice.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **September 29, 2023,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

Dated September 11, 2023, in Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE

---

the District Court Miscellaneous Fee Schedule prescribed by the Judicial Conference of the United States.